IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Francina D. Shack,  )<br>                                        )<br>                    Plaintiff,   )<br>                                        )<br>vs.                                 )<br>                                        )<br>                                        )<br>                                        )<br>Beaufort County School District, )<br>                                        )<br>                    Defendant.  )<br>                                        ) | Civil Action No. 9:11-3201-DCN-BHH<br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for summary judgment [Doc. 26] pursuant to Federal Rule of Civil Procedure 56. The plaintiff brought this case alleging that the defendant failed to promote her and retaliated against her because of her race and age in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.* The plaintiff also alleges that she was subjected to a hostile work environment on account of her race.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## **FACTUAL BACKGROUND**

The plaintiff, an African-American female, was first employed by the defendant for the 2006-07 school year as an assistant principal at Battery Creek High School. It is undisputed that the plaintiff was reassigned for the 2008-09 school year to Hilton Head Island High School as an assistant principal, and then was reassigned to the position of assistant principal at Shell Point Elementary School for the 2011-12 school year. It has been represented that she currently holds the position of assistant principal at Bluffton Middle School.

At the conclusion of the 2010-2011 school year, the School District advertised vacant Principal positions at three schools. (Rosswurm Aff. ¶ 3.) The plaintiff applied for the positions at two of those schools, Whale Branch Elementary School and Whale Branch Middle School. *Id.* A screening review team reviewed the applications received for those positions and recommended candidates for interviews. *Id.* ¶ 4. The plaintiff was selected for an interview for the position at Whale Branch Elementary School but not the position at Whale Branch Middle School. *Id.* ¶¶ 7, 9. The person selected for the Principal's position at Whale Branch Middle School was a Caucasian male under the age of forty. *Id.* ¶ 3. The persons selected for the other two principal positions, including the position at Whale Branch Elementary School for which the plaintiff interviewed, were African-American females of similar age as the plaintiff. *Id.* ¶ 8.

The plaintiff has alleged that she was subjected to race, gender and age discrimination as a result of not being hired for the Principal's position at Whale Branch Middle School. She further alleges that her reassignment to the position of Assistant Principal at Shell Point Elementary School for the 2011-12 school year (Pl. Dep. At 39, 57, 61) was retaliation for complaints that she made about being denied the position at Whale Branch Middle School.

The plaintiff also complains that over numerous years she has been harassed with more work and more students than other assistant principals, denial of necessary flex time, insufficient administrative resources, and certain lesser benefits, specifically, a compensation day. (Pl. Dep. at 26-34,77, 102, 140, 210-12.)

**APPLICABLE LAW**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to

preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

As an initial matter, the defendant has made some arguments concerning the sufficiency of the plaintiff's Complaint with respect to certain possibly intended claims. For the better part, the Court has not viewed the plaintiff as arguing impermissible or insufficiently plead causes. Although the Court would not provide any formal analysis, as always, only sufficiently plead claims have been considered. The result is largely in keeping with the defendant's view.

The Court would address each in turn.

**I.     Race and Age Discrimination (Failure to Promote)**

The plaintiff has first pled a cause of action for failure to promote. She complains that she was discriminated against on account of her race and age insofar as the defendant did not select her as the Principal for Whale Branch Middle School. The plaintiff alleges that the defendant rejected her application because she is black and over 40.[1]

As the Fourth Circuit has explained, the plaintiff may avert the defendant's summary judgment motion and establish her failure to promote claim "through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an

---

[1] It is not entirely clear. The plaintiff may also mean to argue a gender based claim. Essentially, the identical analysis applies throughout.

4

impermissible factor such as race or gender motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m).

Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. The plaintiff does not attempt to establish her discrimination or retaliation claim using direct or circumstantial evidence but relies exclusively on the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting proof scheme.

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

This same framework has been adapted for ADEA claims. *See Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234-35 (4th Cir.1991)**.**

### A.    *Prima Facie* Case

To establish her *prima facie* case of a discriminatory failure to promote, the plaintiff must show: (1) that she is a member of a protected class; (2) that she applied for the position in question; (3) that she was qualified for that position; and (4) that the defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination. *See Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir.1995).

The defendant essentially concedes it - the plaintiff's *prima facie* case. (Mem. Supp. Summ. J. at 9-12.) Indeed, the Principal position went to a white male under the age of 40. There is no allegation in the record that the plaintiff was not qualified for the position, as a base-line matter. The defendant does not argue these elements and instead has drawn lines at its legitimate non-discriminatory reason stage.

### B.    Legitimate Non-Discriminatory Reason

To that end, the defendant has met its burden to produce a legitimate, non-discriminatory reason for rejecting the plaintiff's application for the principal position insofar as it has stated that the plaintiff was not the best qualified. (Rosswurm Aff. ¶¶ 6, 7.) Specifically, the defendant has offered that Matthew Hunt, selected as the Whale Branch Middle School Principal, had served as an assistant principal at that middle school the two years prior, was acquainted with its progress, but that the plaintiff only had experience in a middle school from another school district. *See id.*; (Pl. Dep. at 61-62, 144).

"Job performance and relative employee qualifications [are] widely recognized as valid, non-discriminatory bas[i]s for any adverse employment decision." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998).

### C.    Pretext

Because the defendant has proffered a legitimate, non-discriminatory reason for its actions, the plaintiff bears the burden of demonstrating that the real reason for denial of the promotion was, in fact, an unlawful one. *See Reeves*, 530 U.S. at 142-43.  As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false. *See id.* at 144. Specifically and principally, the plaintiff contends that the reason for her disqualification for the job must necessarily have been false because the individual selected, Hunt, was lesser qualified.

The Fourth Circuit has expressly instructed that, when comparing the relative job qualifications of two candidates, if "the plaintiff has made a strong showing that his qualifications are **demonstrably superior**, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination." *Heiko v. Columbo Savings Bank, F.S.B.*, 434 F.3d 249, 261-62 (4th Cir. 2006). But where "a plaintiff asserts job qualifications that **are similar or only slightly superior** to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." *Heiko, 434 F.3d at 261* (citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 649 & n.4 (4th Cir.2002) (emphasis added); *Evans*, 80 F.3d at 960).

At the outset, the Court would note that the defendant has not highlighted any particular qualifications for the job. It has submitted a policy document, "Hiring of Principals," which does not appear to contain any specific qualifications. (See Rosswurm Aff., Ex. A.)   Some issue of fact exists, therefore, simply as to what the threshold requirements for the position were, against which the plaintiff and other applicants were to be measured.

Regarding their relative qualifications, however, the plaintiff had 17 years experience in education. (Pl. Dep. at 11.) 13 of those years were specifically in administration. (Pl. Dep. at 10-20.) Of those 13, the plaintiff had worked the 5 most recent consecutive years in Defendant Beaufort County School District, itself. *Id.* By contrast, the only evidence of record suggests that Hunt apparently had worked for two years in either education or administration and only one with any certification; the plaintiff alleges, and the defendant does not refute, that he was an intern for the first. (Pl. Dep. at 145-46.) To his credit, Hunt had worked in the specific school where the position vacancy existed.

The Court has rarely seen it, when applying *Heiko*'s "demonstrably superior" standard.  But, the evidence feels relatively lopsided.  The plaintiff's education and administrative experience dwarfs Hunt's by factors.  Whatever value existed in Hunt's familiarity with the particular school seems unlikely to have so decidedly closed the gap on

the plaintiff's some 15 years additional education experience and 11 additional years administrative experience.  It is important to emphasize: the plaintiff was not even *interviewed* for a position, which was ultimately filled by an individual 3 or 4 times her professional junior.  That is not to say he was *not*, in fact, more qualified in some subjective way but only that when the objective credentials are so imbalanced, the law says that a factfinder is allowed to draw an inference that the legitimate reason for denial of promotion was in fact false.   And, the sheer "falsity" of the reason in combination with the *prima facie* case typically is enough to establish pretext.  *See Reeves*, 530 U.S. at 147; *Anderson,* 406 F.3d at 269.

Here, however, this qualifications evidence is not the final word.

First, the defendant is persistent to emphasize that it ultimately hired African Americans, of approximately the same age,  for both of the other two vacancies for principal positions in that same school year (2010-11), and, therefore, it is entitled to the "same-actor" inference articulated in *Proud v. Stone*, 945 F.2d 796 (4th Cir. 1991).  In  *Proud*, an age discrimination case, the Fourth Circuit recognized a "strong inference . . . that discrimination was not a determining factor" in a discharge decision when (1) the person who hired the plaintiff knew of the plaintiff's protected condition when the hiring decision was made, (2) the person who hired the plaintiff also fires her (3) within a "relatively short time span following the hiring," and (4) the employer advances a legitimate and nondiscriminatory reason for the discharge. *See  id.* at 796, 797-98.

The Fourth Circuit has  reasoned that " '[i]t hardly makes sense [for an employer] to hire workers from a group [it] dislikes . . ., only to fire them once they are on the job."  *Id.* at 797.  In theory, if discrimination actually motivated the adverse employment action, the same discrimination most likely would have also affected the employer's original decision to hire the plaintiff. However, because the employer did in fact hire the plaintiff, it is unlikely that discrimination existed either when the plaintiff was hired or shortly thereafter when he was fired. The existence of a legitimate, nondiscriminatory reason for the later decision (the

8

firing) thus creates a compelling inference that this decision was not motivated by discrimination. *See id.* at 798 (Proud 's "strong inference [is] that the employer's stated reason for acting against the employee is not pretextual"). The *Proud* inference, however, can still lose its force when the plaintiff presents sufficiently compelling evidence of discrimination. *See, e.g., Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 513 (4th Cir.1994); Proud, 945 F.2d at 798.

The *Proud* inference has be extended to other discrimination statutes, including Title VII and failure to promote claims. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir.1996); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir.1995); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1318 (4th Cir.1993) (Age Discrimination in Employment Act).

Generally, the Court agrees that the hiring of two African American principals, of a comparable age, in the same time period, is probative evidence that the defendant does not make promotional decisions based on race or age. The jury should hear it. But, the evidence is simply not on all fours, so to speak, with *Proud* such that the inference is directly implicated. As far as the Court has been informed, the person who hired the plaintiff was not on the screening team, which denied the plaintiff an interview for the job.

The defendant and plaintiff argue whether the inference is limited only to circumstances where the precise *individual*, rather than the same employer, is involved in the two decisions, hiring and promoting. With an emphasis on "employer," the defendant cites the general axiom annunciated in *Proud* that "*employers* who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing." *Proud*, 945, F.2d at 798 (emphasis added). But, taking this generalized pronouncement to its logical extreme would seem to mean that any employer who hires even a single member of a protected class would enjoy a kind of permanent immunity for actions taken against others in that same class. Indeed, the actual holding in *Proud* pretty directly states rejects this view: "Therefore, in cases where the hirer and the firer are the same *individual* and the

9

termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer. *Id.* at 797 (emphasis added).  Moreover, limitation of *Proud* to circumstances where only the exact decisionmaker is involved recognizes that even though the employer is vicariously liable, as a legal matter, for all the personnel decisions made in its name, such decisions are really decided by individuals some of whom might harbor animus not actually consistent with the views of the employer as an entity.  It is entirely possible that an employer, through one manager or human resources person, might hire a member of a protected class but that, almost simultaneously, in some other department of the business fire another individual on account of that same protected status at the hands of a separate decisionmaker who, indeed, does harbor illegal animus.  The employer is responsible for both and legally liable in discrimination for the latter.

Even still, the defendant argues that there exists overlap between the decisionmakers who were on the interview committees for the three principal vacancies, such that their non-discriminatory promotion decision for the other vacancies should be credited as some shield with respect to the Whale Branch one. (Rosswurm Aff. ¶ 6.)  But, the plaintiff was not granted an *interview*.  She was disqualified, not by the interview committee, but by the *screening* team, which did not apparently include any members ultimately seated on the interview committees.  (Compare Rosswurm Aff. ¶ 5 with ¶ 6.)

The defendant has simply not articulated a successful *Proud* or *Proud*-like defense, which is dispositive of the claim.

But, to the plaintiff's claim, there is a more damning detail and defense.  Namely, two of the three individuals on the screening team were not only African American but over the age of forty and, therefore, within the classes of protection about which the plaintiff now cries bias.  *Id.* ¶ 5. The screening team, which selected the interviewees, was comprised as follows:

10

- Priscilla Drake (African-American; DOB August 1, 1957), Principal of Whale Branch Early College HighSchool;

- Denise Smith (Caucasian; DOB September 4, 1945), Principal of Robert Smalls Middle School; and

- Cicely Skinner (African-American; DOB September 19, 1948), Nurse at Whale Branch Middle School.

*Id.* In other words, two of the three team members were also black and over the age of 40. The third member was over 40. Whatever perceived and/or overlooked differential in qualification, as between the plaintiff and Hunt, was measured at the time she was rejected for an interview and not upon the hiring decision, when the plaintiff was no longer a part of the pool of applicants. The only relevant decisionmakers, therefore, are the three individuals on the screening team who declined her the interview.

It is well understood that an allegation of discrimination loses persuasiveness when the decisionmaker falls within the same protected class as the plaintiff. *See Coggins v. Gov't of D.C.*, 1999 WL 94655, at *4 (4th Cir. Feb. 19, 1999) ("The fact that both Krull and Gibbons, first and third in Coggins' chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."); *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir.1991) ("[I]t is difficult for a plaintiff to establish discrimination when the allegedly discriminatory decision-makers are within the same protected class as the plaintiff."). And, while such a detail alone does not eliminate, dispositively, the possibility that someone of a particular class might discriminate against another class member on those same class-specific grounds, once established, the plaintiff must make some additional evidentiary showing of class-on-class animus to establish pretext. *See United States v. Crosby*, 59 F.3d 1133, 1135 n. 4 (11th Cir.1995) ("While we acknowledge that a . . . violation may occur even where a supervisor or decision-maker is of the same race as the alleged victim . . . we note that the district court found that there was no evidence that [the decision-maker] held members of his own race to a higher standard of conduct than members of another race.").

11

The plaintiff, here, has made no such showing or argument. She does not make any claim that the two individuals on the screening team, of her race and age, were nevertheless bigoted against that race and age.

To the extent any inference could have been drawn from the differential in qualifications between the plaintiff and Hunt, it seems all but negated by the unrebutted fact that a controlling majority of the decisionmakers, on the committee that rejected the plaintiff, were black, female, and over the age of 40 – exactly like the plaintiff.

It is no small capstone to this point that the plaintiff, herself, has conceded that her rejection for the job was not because of discrimination but retaliation. (Pl. Dep. at 149.) No reasonable jury could find for the plaintiff on a, race or age or gender, failure to promote claim.

## II.     Retaliation

Next, the plaintiff contends that she was retaliated against for having filed a formal grievance against her Principal, Amanda O'Nan, in 2009. Sometime that year, the plaintiff was forced to obtain different childcare arrangements. (Pl. Dep. at 98-100.) The new arrangements threatened to make her regularly 30 minutes late to work. (Dep. at 77, 101.) The plaintiff requested, from O'Nan, a flex schedule to accommodate the delay but it was denied. (Pl. Dep. at 102.) The plaintiff believes that she later discovered that Caucasian predecessors were allowed "flextime" for their childcare needs. (Pl. Dep. at 78.) On August 17, 2009, the plaintiff filed a grievance against O'Nan alleging that O'Nan discriminated against her by denying the plaintiff the child care flexibility that O'Nan afforded herself and other Caucasian employees. (Pl. Dep. Ex. 12.)

The plaintiff believes that the subsequent decision to transfer her to Shell Point Elementary School was in retaliation for this grievance. She also raises the denial of the interview for the Whale Branch position.

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an

unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  The *McDonnell Douglas* burden shifting scheme, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies in analyzing retaliation claims under Title VII.  *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000).

But, the plaintiff has provided something more effective – namely, strong circumstantial evidence – which eliminates any need for recourse to *McDonnell Douglas*. *See Diamond*, 416 F.3d at 318.

The Superintendent of Beaufort County Schools, Dr. Valerie Truesdale, wrote the plaintiff the following:

> I did not say that you were not getting interviews due to loyalty issues.  I said I have not been involved in selecting candidates for interviews and so did not know what, if anything, were impressions of screening team members about you.
>
> I suggested that you should ponder on your track record of communication style. I cited your pattern (at two different schools) of addressing concerns to the district and NAACP without benefit of honest, direct dialogue with your supervisor.

[Doc. 30-15.]

Although Truesdale was not on the screening team and although she attempts to reiterate this point, she is the Superintendent.  And, her email might readily be interpreted as knowledge that the employment decision, to not interview her, was based on an illegal consideration, namely a prior discrimination grievance.

To the extent there is any disagreement over whether the denial of a promotion is an adverse employment action, it is.  *See Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 544 (4th Cir. 2003) ("It has long been clear that failure to promote an employee constitutes an adverse employment action"); *see also Ware v. Potter*, 106 Fed.Appx. 829, 831 (4th Cir. August 10, 2004).

The retaliation claim should plainly survive summary judgment.

**III.    Hostile Work Environment Claim**

Lastly, the defendant has moved for dismissal of the plaintiff's hostile work environment claim. To establish a hostile work environment claim, the plaintiff must prove by a preponderance of the evidence that she was subjected to (1) unwelcome harassment; (2) based on her race; (3) that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere; and (4) that is imputable to the defendant. *See EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir.2009).

### 1.    Severe or pervasive

The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) (en banc). First, the plaintiff must show that she "subjectively perceive[d] the environment to be abusive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Next, the plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).

Issues of fact exist as to the plaintiff's subjective impression. The plaintiff has provided evidence that she was physically effected by the alleged hostile environment and that she sought medical treatment. (See Pl. Dep. at 74.) A reasonable jury could conclude, based on this evidence, that the plaintiff subjectively perceived the defendant's conduct as severe or pervasive. *See, e.g., Spriggs*, 242 F.3d at 185-86 (finding a victim's complaints to supervisors about harassment shows he believed the environment was hostile or abusive).

As to the objective severity of the harassment, it "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances,'" giving "careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81; *see also Harris*, 510 U.S. at 23 (warning whether a hostile environment actually existed "can be determined only by looking at all the circumstances"). "There is no mathematically precise test" for

14

determining when a hostile or abusive work environment exists. *Harris*, 510 U.S. at 22. The circumstances that should be considered include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23; *see also EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). But, "'no single factor is' dispositive." *Sunbelt*, 521 F.3d at 315 (quoting *Harris*, 510 U.S. at 23).

In order to be actionable, the harassing "conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment." *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The Fourth Circuit has "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *Id*. It has stated, therefore, that the "task then on summary judgment is to identify situations that a reasonable jury might find . . . instances where the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *Id*. (quoting *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007). "[W]hether harassment was sufficiently severe or pervasive to create a hostile work environment is 'quintessentially a question of fact' for the jury." *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 199-200 (4th Cir. 2000) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 243 (4th Cir. 2000)).

To summarize, the plaintiff has identified the following broad areas of alleged harassing conduct:

- she had to oversee twice as many students as the other assistant principals;
- she was in charge of three programs that required attendance after normal working hours;
- she was not allowed to take flex time;
- she was not awarded a compensation day for working a Saturday program; and

15

- she was not provided the same clerical help as other assistant principals

(Pl. Resp. at 24-25.)

There is some issue as to what portion of these allegations are material for consideration. Many are stale in age. The plaintiff emphasizes that in a hostile work environment claim, if any conduct occurs within the relevant statutory period, associated conduct, outside that period, may still be considered. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). The Court need not decide the matter.

The allegations of the plaintiff, accepted in their totality and with every severity credited in the plaintiff's favor, do not meet the objective standard. The allegations contain no evidence of racially threatening or humiliating or abusive behavior. She was treated differently, at best. But, courts have repeatedly held that such job-duty-related disparities and grievances are not of the kind of severity the claim contemplates. *See Fleming v. MaxMara USA, Inc.*, 371 Fed. App'x 115, 119 (2d Cir. 2010) (finding that excluding employee from meetings and criticizing employee's work did not support hostile work environment claim); *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir.2002) (finding that supervisor's "rude, abrupt, and arrogant" behavior and "stern and severe criticism" did not support employee's hostile work environment claim); *Cole v. Hillside Family of Agencies, Inc.*, 2011 WL 2413928, at *7 (D. Md. June 9, 2011) (finding that being forced to work without pay, being forced to redo assignments, being denied professional development opportunities, unjustifiably removing job duties, and isolating from co-workers is not sufficiently severe and pervasive for a hostile work environment claim)*; Myers v. Md. Auto. Ins. Fund*, 2010 WL 3120070, at *6 (D. Md. Aug.9, 2010) (finding that allegations of employer micro-managing, harassing, and belittling employee was unwelcome but not severe and pervasive). These allegations simply do not meet the "high bar" established by the Fourth Circuit.

At best, the plaintiff may have identified discrete acts of discrimination, long ago abandoned, but such acts of discrimination "cannot be transformed, without more, into a hostile work environment claim." *Kilby–Robb v. Spellings*, 522 F.Supp.2d 148, 164 (D.D.C.2007). They are not based on "severe and pervasive discriminatory intimidation or insult." *Lester v. Natsios*, 290 F. Supp.2d 11, 33 (D.D.C.2003). The plaintiff has complained of workload disparity not racially abusive conduct. *See Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir.1996) (working environment must be "hostile or deeply repugnant," not "merely unpleasant," to be actionable).

The claim should be dismissed.[2]

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 26] be GRANTED in part and DENIED in part. Specifically, the defendant's motion, as to the plaintiff's failure to promote and hostile work environment claims should be GRANTED. As to the plaintiff's Title VII retaliation claim, it should be DENIED.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

July 15, 2013
Charleston, South Carolina

---

[2] The Court, therefore, would decline to specifically address whether this claim was preserved in the EEOC Charge of Discrimination.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).