IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Francina D. Shack, ) | |
| ) | Civil Action No. 9:11-3201-DCN-BHH |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Beaufort County School District, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on the Defendant's motion for summary judgment [Doc. 26] pursuant to Federal Rule of Civil Procedure 56. The Plaintiff brought this case alleging that the Defendant failed to promote her and retaliated against her because of her race and age in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq*. The Plaintiff also alleges that she was subjected to a hostile work environment on account of her race.

The district court previously affirmed [Doc. 38] a recommendation [Doc. 35] that the Plaintiff's claims for failure to promote and for hostile work environment be dismissed. In that same Order, however, it rejected the recommendation that the Plaintiff's retaliation claim proceed and remanded with further instruction for the magistrate judge to reconsider that claim. [Doc. 38.] Upon additional review, it is recommended that the Plaintiff's retaliation claim also be dismissed.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**APPLICABLE LAW**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or  "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the Plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

The Plaintiff, an African-American female, was first employed by the defendant for the 2006-07 school year as an assistant principal at Battery Creek High School. It is undisputed that the Plaintiff was reassigned for the 2008-09 school year to Hilton Head Island High School (HHIHS) as an assistant principal, and then he was reassigned to the position of assistant principal at Shell Point Elementary School for the 2011-12 school year. It has been represented that she currently holds the position of assistant principal at Bluffton Middle School.

At the conclusion of the 2010-2011 school year, the School District advertised vacant Principal positions at three schools. (Rosswurm Aff. ¶ 3.) The Plaintiff applied for the positions at two of those schools, Whale Branch Elementary School and Whale Branch Middle School. *Id*. A screening review team reviewed the applications received for those positions and recommended candidates for interviews. *Id*. ¶ 4. The Plaintiff was selected for an interview for the position at Whale Branch Elementary School but not the position at Whale Branch Middle School. *Id*. ¶¶ 7, 9. The person selected for the Principal's position at Whale Branch Middle School was a Caucasian male under the age of forty. *Id*. ¶ 3. The persons selected for the other two principal positions, including the position at Whale Branch Elementary School for which the Plaintiff interviewed, were African-American females of similar age as the Plaintiff. *Id*. ¶ 8.

After the Plaintiff was rejected for the two principal positions, she was contacted regarding her interest in filling the assistant principal position at Shell Point Elementary School (SPES) in Beaufort. (Pl. Dep. at 57.) The Plaintiff alleges to have previously made clear her desire to stay at HHIHS but represents that she considered the transfer. After

learning that SPES was on the school closure list, however, she declined. [Doc. 30-16.] Nevertheless, the Plaintiff was told that a transfer to SPES would be the best option and that she did not have a choice in the matter. (Pl. Dep. at 61.)  Thereafter, the Plaintiff was transferred to the assistant principal position at SPES. (Pl. Dep. at 39.)

The Plaintiff has alleged that her reassignment to the position of Assistant Principal at Shell Point Elementary School for the 2011-12 school year (Pl. Dep. At 39, 57, 61) was retaliation for certain complaints and grievances she had made against the Defendant. Specifically, the Plaintiff, on August 17, 2009, filed a grievance against an Amanda O'Nan alleging that O'Nan discriminated against her by denying her the child care flexibility that O'Nan afforded herself and other Caucasian employees. (Pl. Dep. Ex. 12.)

Later, in November of 2010, the Plaintiff addressed her concerns regarding having not been selected for the principal positions.  The Plaintiff was told,  that she was not getting the positions because she had filed grievances in the past. (Pl. Dep. at 213.) In an email following this conversation, the Plaintiff was told that "before assuming the district is blocking [her] progress" she "should ponder on [her] track record of communication style . . ." specifically of "addressing concerns to the district and NAACP without benefit of honest, direct dialogue with [her] supervisor." [Doc. 30-15.]

The Plaintiff's allegations concerning retaliation in the complaint are set forth as follows:

> Plaintiff questioned the human resources director about the denial of the promotion to principal at Whale Branch Middle School and the denial of the opportunity for an interview. In retaliation, the Defendant removed Plaintiff from her position and assigned her as assistant principal at Shell Point Elementary School. This position requires substantially more travel and more expense for Plaintiff. In addition, Plaintiff had not worked as an assistant principal on the elementary school level at all and last worked in administration for an elementary school as a guidance counselor in 1998.

(Compl. ¶ 8.)

The magistrate judge originally considered the Plaintiff's retaliation claim with respect to the Plaintiff's contention that she was retaliated against for having filed a formal grievance against her Principal, Amanda O'Nan, in 2009. [Doc. 35 at 12.] The district court ruled that this allegation was not properly a part of the Complaint and that, upon remand, the magistrate judge should consider the sufficiency of the retaliation claim as pled and quoted above. [Doc. 38 at 5.]

Upon additional review, the Defendant has not challenged the pleading sufficiency of the retaliation claim. Indeed, it concedes it twice. (See Mem. Supp. Summ. J. at 3, 5.) Instead, the Defendant makes an evidentiary challenge to the claim that no issues of fact exist. *Id*. at 14-17. The Court will consider those arguments now.

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* burden shifting scheme, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies in analyzing retaliation claims under Title VII. *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000). The Plaintiff does not attempt to rely on any direct evidence.

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

### *Prima Facie* Case

To establish a *prima facie* case of retaliation, a Plaintiff must show (1) that she engaged in a protected activity, (2) that the defendant acted adversely against her, and (3)

that the protected activity was causally connected to the adverse action. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). The Defendant argues that the Plaintiff cannot prove the second element of her retaliation claim because no adverse employment action was taken against her. The Defendant emphasizes that the United States Supreme Court identified an adverse employment action as "discharge, demotion or undesirable reassignment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). The Defendant contends, therefore, that a lateral transfer to an assistant principal position in an elementary school, with no change in pay, benefits or hours, is not an undesirable reassignment. *See Butler v. Ysleta Independent School District*, 161 F.3d 263 (5th Cir. 1998) (reassignment of teachers to different grade levels was not a tangible employment action); *Murphy v. Board of Education of the Rochester City School District*, 273 F. Supp.2d 292 (W.D.N.Y. 2003) (reassignment to different school was not an adverse employment action); *Lucero v. Nettle Creek School Corp.*, 566 F.3d 720 (7th Cir. 2009) (reassignment from seventh grade to third grade was not an adverse employment action); *Dass v. Chicago Bd. of Education*, 675 F.3d 1060 (7th Cir. 2012) (reassignment from twelfth grade to seventh grade was not adverse employment action).

The United States Supreme Court, in *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), however, articulated an objective test for what constitutes an adverse employment action for purposes of a Title VII retaliation claim. Specifically, the Supreme Court stated that an adverse employment action is any action which might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2415 (citation omitted).  The retaliation provision of Title VII is intended to prohibit employer actions "that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers."  *Id*.  Although normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence, *id*., an employer's actions are to be considered in light of the "circumstances of the particular case,

6

and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," *id*. at 2417.

Here, the Plaintiff has put forward evidence that the transfer, after a year's time, would have resulted in less pay, in the amount of approximately $3,600 per year. [Doc. 30-21.] Although the Plaintiff never actually realized such a loss, its potentiality, at the time of her transfer, could have certainly been viewed by a reasonable worker as a significant enough change as to have dissuaded her from complaining in the first instance about perceived discrimination. The fact that the reduction in pay never occurred seems beside the point. It is the deterrent effect flowing from the perception of a kind of anticipated retaliation that seems to matter under *Burlington*. *See Burlington*, 126 S. Ct. at 2415 Transfers that do not even involve any change in pay status can constitute adverse employment actions. *See Ferguson v. Waffle House, Inc.*, 2014 WL 1870784, at *17, n.21 (D.S.C. 2014). But, courts have certainly found that, with respect to transfers that might otherwise appear lateral, a reduction in pay is certainly a continuing and valid consideration. See *Rivera v. Prince William Cnty. Sch. Bd.*, 2009 WL 2232746, at *8 (E.D. Va. July 22, 2009) (dismissing a retaliation claim based on a transfer and stating "[a] transfer to Dumfries as opposed to a school and grade level that Ms. Rivera preferred does not mean that the transfer had a significant detrimental effect . . . because Ms. Rivera does not allege that the transfer required her to take a reduction in pay or that it otherwise reduced her future job opportunities."). Here, issues of fact exist as to the presence of an adverse employment action. The allegedly involuntary transfer to the threat of less pay, even in modest degree, seems to satisfy the objective test in *Burlington*.

The Defendant next contends that the Plaintiff cannot establish any causal connection as required by the *prima facie* case's third element. But, the objection is non-serious. Baldly, the Defendant says:

> The Plaintiff was not reassigned to an elementary school in the same position with the same pay and benefits in retaliation for any grievances filed in 2008 or 2009, nor was the reassignment

> in retaliation for any questions asked about not being interviewed for the Whale Branch Middle School principal position . . . . she was reassigned to an elementary school assistant principal position so that she could acquire the experience and knowledge that she lacked when she had interviewed for the elementary school principal position.

(Def. Mem. Summ. J. at 16.)  But, the Defendant cannot simply claim it.  Such is the actual legal question – are those incidents related?  The Defendant does not argue, as is typical, that the transfer was somehow too remote in time from the Plaintiff having complained about not receiving the principal positions.

But, the Fourth Circuit has held that, to establish a *prima facie* case, "very little evidence of a causal connection is required" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a prima facie retaliation case. *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (holding three month time period between protected activity and termination sufficient to satisfy the causation element of the *prima facie* case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later).  *But see Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("[T]hirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation.")  Without a temporal proximity, the Plaintiff must produce some "other evidence" establishing causation.  *Causey*, 162 F.3d at 803.

In that regard, the Plaintiff complained about her having been rejected for the principal positions in November 2011.  She was not transferred until July 2012.  While seven months is on the limits of what might permissibly establish causality for purposes of a *prima facie* case, in the context of a school calendar year, the proximity seems all the more material.  Namely, the Plaintiff was effected in her job, in the form a transfer, at essentially the earliest possible time after her grievance.  While it is probably theoretically

possible that she could have been retaliatorily transferred mid-year, the most likely opportunity for such retribution, if any, would be in the context of the normal timing of such decisions – between school years.  The proximity is enough to create issues of fact as to causality.

The Plaintiff has made out her *prima face* case of retaliation.

### Legitimate Non-Discriminatory Reason

But, the Defendant has met its burden to produce a legitimate, non-discriminatory reason for transferring the Plaintiff.   Namely, the Defendant has offered that the Plaintiff was reassigned so that she could acquire the experience and knowledge for future principalship openings, which she allegedly lacked when she was previously rejected for them.  (Mem. Supp. Mot. Summ. J. at 16.)

### Pretext

Because the Defendant has proffered a legitimate, non-discriminatory reason for its actions, the Plaintiff bears the burden of demonstrating that the real reason for denial of the promotion was, in fact, an unlawful one.  *See Reeves*, 530 U.S. at 142-43.

The Plaintiff's rejoinder is not persuasive.  She begins by arguing that she herself "did not find the transfer to be such [an opportunity] when she declined the offer for an assistant principalship at SPES."  (Pl. Resp. at 29.)  Respectfully, her view of the effectiveness of the Defendant's rationale is not relevant, either to whether it was, in fact, effective or to whether it was legitimate and non-discriminatory even if ultimately ineffective. It is not the province of the court or the Plaintiff to decide whether the reason for an employer's adverse employment action "was wise, fair, ***or even correct***, ultimately, so long as it truly was the reason for the [adverse employment action]."[1]  *See Dugan v. Albemarle*

---

[1] In *Dugan*, the plaintiff claimed that the defendant failed to properly apply a reduction-in-force policy. The Fourth Circuit stated that "[e]ven if there is evidence that the school board erroneously or even purposely misapplied the RIF policy, it is not proof of unlawful discrimination." *Dugan*, 293 F.3d at 722.

*County School Bd.*, 293 F.3d 716, 722 (4th Cir. 2002) (emphasis added).  The burden remains on the Plaintiff to demonstrate that the reasons offered by the Defendants are not simply incorrect but rather "unworthy of credence *to the extent* that it will permit the trier of fact *to infer the ultimate fact* of intentional discrimination."  *Id.* at 723 (emphasis added).

In a Seventh Circuit decision, the Plaintiff was accused of theft.  *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935 (7th Cir. 2003).  The court stated that "it was up to [the plaintiff] to produce evidence showing that Wal-Mart ***did not genuinely believe*** that she had lifted the $12.65.  It is not enough for her to show that the investigators might have made a mistake in their conclusion."  *Id.* at 940 (citing *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 718 (7th Cir.1999).  So long as the Defendant honestly believed that the Plaintiff's opportunity for future positions was improved by the transfer, her view that it would not is immaterial and her "claim cannot survive a motion for summary judgment."  *See Adams*, 324 F.3d at 940.  The Plaintiff also emphasizes that the transfer cannot possibly have been considered a reasonable "opportunity" considering SPES was to close in one year.  (Rosswurm Aff. ¶ 10.)  But, again, this says more about her valuation of the opportunity than the Defendant's genuineness.  A year's time in the role is not insignificant; it is more experience as an assistant principal than none at all, her alternative; and the Defendant, the decisionmaker for such positions, apparently thought a year's time was material to future principalship opportunities.  That the Plaintiff believes the opportunity less than advertised is, again, nondispositive of the issue of the falsity of the Defendant's reasons for transfer.

Last of all, the Plaintiff argues that Human Resource Services Officer, Dr. Jacqueline Rosswurm, misstated the facts about the transfer in her affidavit, which tends to show that the Defendant's proffered reason for transferring the Plaintiff is unworthy of credence.  Specifically, Rosswurm swears that the Plaintiff voluntarily transferred to SPES. (Rosswurm Aff. ¶ 10.)  In an email dated July 15, 2011, however, from the Plaintiff to Rosswurm, the Plaintiff indicated that she "is declining the position as the AP at Shell Point Elementary

10

School." [Doc. 30-16.]  When Rosswurm and the Plaintiff later discussed the matter, Rosswurm told the Plaintiff that she did not have the option of declining the position at SPES. (Pl. Dep. at 61.)

But there is no inconsistency to impeach.  In the same paragraph, Rosswurm further swears, "Ms. Shack was transferred to Shell Point Elementary School in order for her to obtain experience as an administrator in an elementary school setting," an explanation identical to the one proffered now.  (Rosswurm Aff. ¶ 10.)  So, while it might be accused that Rosswurm has overstated the Plaintiff's willingness to be transferred, it cannot be said that the Defendant has changed its account.  It has been consistent in its explanation.  Were the Defendant to have exclusively implied in the affidavit, that the Plaintiff's desire to be transferred explained the assignment, a pretext case may have been built from it.  But, here, the Defendant has always been consistent that it viewed the transfer as an opportunity for experience.  Whether its view of her enthusiasm for it was accurate is another matter, under the circumstances.

The Plaintiff has not produced any evidence of pretext.  The claim should not survive.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Defendant's motion for summary judgment [Doc. 26] be GRANTED with respect to the Plaintiff's retaliation claim.  It appears that, if the recommendation is adopted, the entirety of the case should be dismissed *with prejudice*.

IT IS SO RECOMMENDED.

_____
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

July 8, 2014
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).